**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-00785-JEB |
| JOHN F. KERRY, in his official capacity as SECRETARY OF STATE OF THE UNITED STATES, | |
| Defendant. | |
| CAUSE OF ACTION INSTITUTE, | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-01068-JEB |
| JOHN F. KERRY, in his official capacity as SECRETARY OF STATE OF THE UNITED STATES, and DAVID S. FERRIERO, in his official capacity as ARCHIVIST OF THE UNITED STATES, | |
| Defendants. | |

## <u>REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    I.     THE FRA DOES NOT MANDATE THAT DEFENDANTS REQUEST
          THAT THE ATTORNEY GENERAL INITIATE LEGAL ACTION ................... 3

    II.    STATE'S AND NARA'S EFFORTS ARE SUBSTANTIAL AND
          SUFFICIENT TO SATISFY THEIR OBLIGATIONS UNDER THE FRA .......... 7

    III.   DISCOVERY IS NOT NECESSARY TO RESOLVE THE QUESTIONS
          OF STANDING AND MOOTNESS ................................................................. 10

CONCLUSION .................................................................................................................. 14

**<u>INTRODUCTION</u>**

The U.S. Department of State ("State"), in consultation with the National Archives and Records Administration ("NARA"), has proceeded diligently and methodically to recover and preserve federal record emails from former Secretary of State Hillary Clinton's private email account.  Late last year, with former Secretary Clinton's cooperation, State was provided approximately 55,000 pages of her emails.  State then requested that former Secretary Clinton not delete any federal records in her possession or control, and Secretary Clinton committed to preserving all federal record emails in her custody.  To enable recovery of any additional federal record emails, State also requested that the Federal Bureau of Investigation ("FBI") preserve any recoverable media and content that it may have.

Most recently, out of an abundance of caution and in light of the intense public interest in these particular records, State requested that former Secretary Clinton confirm that she has provided all federal record emails in her possession and recommended that she contact any other internet service or email providers to obtain any emails from the beginning of her tenure at State that may reside on other systems.  *See* Letter from Patrick F. Kennedy (State) to David E. Kendall (Oct. 2, 2015) (Exhibit A hereto).  Former Secretary Clinton's attorney, David Kendall, has confirmed that she has provided all federal email records in her possession.  *See* Letter from David E. Kendall to Patrick F. Kennedy (State) (Oct. 8, 2015) (Exhibit B hereto).  Mr. Kendall further assured State that, while former Secretary Clinton has to date been unable to obtain emails sent or received during the early part of her tenure, of which she does not have custody, she will "immediately provide [State] with federal record e-mails in this collection" should she obtain access to this group of emails.  *Id.*

The Federal Records Act ("FRA") does not require anything more of State or NARA in these circumstances, and hence plaintiffs can receive no further relief from this Court under the FRA. Accordingly, plaintiffs' claims are not redressable, and these lawsuits must be dismissed for lack of standing and/or mootness. The FRA does not mandate, as plaintiffs assert, that State and/or NARA request that the Attorney General initiate legal action regardless of circumstances. Rather, as interpreted by the D.C. Circuit, the FRA confers broad discretion on the agencies to determine the steps they will take when recovering records, and the Court is authorized to intervene only when the agency and NARA have failed effectively to act. Here, defendants have made extensive efforts to recover the records in question, consistent with the administrative scheme of the FRA. The results, in conjunction with the cooperation that State has obtained, obviate the need to request legal action by the Attorney General. Since that is the only judicial remedy available to private parties under the FRA, these consolidated cases should be dismissed.

Finally, the "jurisdictional discovery" requested by plaintiff Cause of Action Institute ("COAI"), now joined by plaintiff Judicial Watch, is not necessary or appropriate to resolve defendants' motion. Defendants have moved to dismiss plaintiffs' claims as a matter of law, and, for purposes of that motion, defendants have accepted the factual allegations in plaintiffs' Complaints as true. Therefore, there is no dispute of fact before the Court, and no cause for discovery.[1]

---

[1] Defendants address COAI's arguments regarding jurisdictional discovery in the last section of this brief, and will also file a separate opposition to COAI's discovery motion (recently joined by Judicial Watch).

2

**ARGUMENT**

I.    **THE FRA DOES NOT MANDATE THAT DEFENDANTS REQUEST THAT THE
      ATTORNEY GENERAL INITIATE LEGAL ACTION**

Plaintiffs principally assert that, regardless of circumstances, the FRA requires that

defendants "*must* initiate action through the U.S. Attorney General for recovery of federal

records" and that this is a mandatory duty that "is not discretionary."  Pl. Judicial Watch's Opp.

to Def.'s Mot. to Dismiss (ECF No. 12) ("JW Opp."), at 8-9 (emphasis added); *see also* Pl.

Cause of Action's Mem. in Opp. to Defs.' Mot. to Dismiss (ECF No. 11) ("COAI Opp."), at 1

(referring to defendants' allegedly "non-discretionary statutory duty to initiate action through the

United States Attorney General"), 12-13.  But plaintiffs ignore the import of the D.C. Circuit's

decision in *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991) (*Armstrong I*).  That decision

made clear that NARA and the agencies retain discretion about what steps should be taken to

recover records.

Plaintiffs rely on the use of "shall" in the provisions governing recovery of records, 44

U.S.C. §§ 2905, 3106.  *See* COAI Opp. 12 n.8.  But the courts have recognized that interpreting

"shall" to denote a mandatory duty is not warranted where "such construction is inconsistent

with the manifest intent of the legislature or repugnant to the context of the statute."  *Williams v.

United States*, 33 A.3d 358, 360 (D.C. 2011) (quoting *Leonard v. District of Columbia*, 801 A.2d

82, 84-85 (D.C. 2002) (internal quotation marks omitted)); *see also Kakeh v. United Planning

Org., Inc.*, 655 F. Supp. 2d 107, 124 (D.D.C. 2009) (also citing *Leonard*).  Ultimately, "[t]he

question whether 'shall' commands or merely authorizes is determined by the objectives of the

statute."  *Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001); *see generally King v.

Burwell*, --- U.S. ---, 135 S. Ct. 2480, 2489 (2015) ("[W]hen deciding whether the language is

plain, we must read the words 'in their context and with a view to their place in the overall

statutory scheme.' . . . Our duty, after all, is 'to construe statutes, not isolated provisions.'" (citation omitted)).

Here, as prior judicial interpretations of the FRA have recognized, the statutory context militates against reading the statute inflexibly to require an agency to request that the Attorney General initiate legal action *any time* records have been removed.  *See Armstrong I*, 924 F.2d at 296 n.12.  Interpreting the statute in that manner would lead to implausible results not consistent with the FRA.  The FRA constructs a records management scheme in which the affected agencies and NARA work collaboratively to develop and implement efficient and effective methods for managing records.  *See* Defs.' Mem. in Support of Mot. to Dismiss (ECF No. 9-1) ("Defs.' Dismiss Mem."), at  3-5.  It would run counter to this scheme for NARA and the agency to be forced immediately to adopt an adversarial stance and to refer to the Attorney General every possible issue of records removal.  Immediate litigation would be impractical and inefficient if the agency can recover the records through cooperative action.  Rather, as the courts have noted (*see* Defs.' Dismiss Mem. 5; *see also infra*), the statutory scheme contemplates that NARA and the agencies will retain discretion as to how to proceed.  Specifically, NARA and the agencies retain discretion about what steps should be taken to recover records, whether unlawfully removed or not, what constitutes a reasonable recovery effort, and when it is appropriate to initiate action through the Attorney General.

Under plaintiffs' interpretation, a request for initiation of legal action by the Attorney General would be required even if the agency had completed every practical effort to recover records, or if the agency reasonably believed there was nothing more, as a practical matter, that such litigation could accomplish.  Indeed, in this case, plaintiffs continue to call for legal action (presumably against former Secretary Clinton) even though her attorney has confirmed, at

State's request, that she has provided State "with all federal e-mail records in her custody, regardless of their format or the domain on which they were stored or created."  Exh. B. Plaintiffs' extreme reading of the statute should be rejected.

This Circuit has expressly, and sensibly, recognized that the FRA does not require that the first action by NARA or the agency head be a legal action.  *Armstrong I*, 924 F.2d at 296 n.12 (stating that the agency head and NARA "may proceed first by invoking the agency's 'safeguards against the removal or loss of records,' 44 U.S.C. § 3105" and that the "mandatory statutory language" in the FRA does not mean that they must "initially attempt to prevent the unlawful [destruction or removal of records] by seeking initiation of legal action").  Rather, the Court of Appeals has explained that the agency head and NARA are only "required to *take action* to prevent the unlawful destruction or removal of records," *id.* (emphasis added), without specifying what that action must be.  *See Citizens for Responsibility & Ethics in Wash. v. U.S. S.E.C.*, 916 F. Supp. 2d 141, 149 (D.D.C. 2013) (*CREW v. SEC*) ("*Armstrong I*'s language makes clear that the agency has choices regarding 'the manner of its action'" (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004))).  Instead of accepting this reasoning, plaintiffs erroneously rely on language elsewhere in the *Armstrong I* opinion (*see* JW Opp. 8; COAI Opp. 12).  But the portions they rely on address only whether the actions taken by the agency and NARA are *unreviewable* as committed to agency discretion by law, not whether a request to initiate legal action is unequivocally mandated.  The *Armstrong I* court concluded that the agency's actions were subject to judicial review because the FRA "*requires* the agency head and Archivist to take enforcement action," 924 F.2d at 295 (emphasis in original), but made clear, by the reasoning in footnote 12, that the statute mandated only some form of redress, not a specific request to initiate legal action in every case.

5

Plaintiffs also focus on the *Armstrong I* court's use of the word "prevent" in the footnote, suggesting that the footnote is not applicable to efforts to "recover" records.  COAI Opp. 13-14; JW Opp. 8-9.  But the *Armstrong I* court used "prevent" because that was the action expressly at stake there – plaintiffs in that case were seeking to prevent erasure of records, not to recover records already removed.  *See CREW v. SEC*, 916 F. Supp. 2d at 147 (observing that both *Armstrong* cases "were forward looking, seeking to prevent the future destruction of records").  Nothing in the *Armstrong I* opinion or its logic suggests that the agency and NARA's discretion under the FRA is limited to only that situation.  Simply because agency action short of a lawsuit can be effective to prevent the unlawful destruction or removal of records does not mean that it cannot also be effective to recover records, as it has in fact been in this case.  *See* COAI Opp. 13-14.

Consistent with the above discussion, the D.C. Circuit has indicated that a cause of action to compel a request for initiation of legal action is authorized only where the agency has done nothing, or at the most done nothing effectual.  *See Armstrong I*, 924 F.2d at 295 ("[I]f the agency head or Archivist does nothing while an agency official destroys or removes records in contravention of agency guidelines and directives, private litigants may bring suit to require the agency head and Archivist to fulfill their statutory duty to notify Congress and ask the Attorney General to initiate legal action."); *see also Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1288 n.12 (1983) (upholding injunction against the Archivist because the Archivist "failed to take any actions – formal or informal – necessary to prevent statutory violations").  As discussed below, State and NARA have made substantial efforts to recover federal records in this case, and those efforts have been effective.  They have unquestionably not "done nothing," nor

have they been "unable or unwilling" (COAI Opp. 2)[2] to complete all recovery that is

practicable.  Therefore, plaintiffs cannot invoke this Court's authority to compel them to seek

Attorney General action.

## II.     STATE'S AND NARA'S EFFORTS ARE SUBSTANTIAL AND SUFFICIENT TO SATISFY THEIR OBLIGATIONS UNDER THE FRA

Plaintiffs contend that defendants' actions are inadequate to satisfy the FRA's

requirements for recovery of records and, therefore, that a live, redressable controversy remains

that is sufficient to confer standing.  JW Opp. 9.  Plaintiffs characterize defendants' actions as

"mere" letter writing that "provides no reason whatsoever to believe that the records will be

returned."  JW Opp. 9-10; *see also* COAI Opp. 17.  They insist that a more aggressive approach

is required by the FRA.  But plaintiffs overlook the key fact that defendants' letters have already

proven effective in prompting the production of emails by former Secretary Clinton.  Because

defendants' letters, which are consistent with the collaborative scheme created by the FRA, have

proved effective, further action in the form of a referral to the Attorney General is not necessary

or required.  *See CREW v. SEC*, 916 F. Supp. 2d at 150-51 (finding that agency fulfilled its

duties where it took a series of "internal remedial steps," including making efforts to retrieve

documents that might still exist).

Specifically, former Secretary Clinton took action in response to State's 2014 letter,

which requested that she provide federal record emails in her possession, and, indeed, her

representatives provided approximately 55,000 pages of federal record emails.  She has stated

---

[2]  At places in its brief, plaintiff COAI appears to concede that initiation of legal action should be required only where the agency or NARA is "unable or unwilling to recover" records. COAI Opp. 2; *see also id.* at 14 (no discretion left to agency only after efforts to recover records "were unsuccessful . . . or failed").

that these are all the federal email records in her possession or control.  Exh. B.  She has

informed State that she does not have custody of, and has been unable to obtain, emails from the

early part of her tenure, but that, if she is able to obtain them, she will forward to State those that

constitute federal records.[3]  *Id.*  State has requested that the FBI preserve any of the recoverable

media and content it may have that may contain federal records.  Plaintiffs complain that these

efforts have failed to ensure a "complete return" of former Secretary Clinton's records, JW Opp.

13, but, as explained above, that is not the standard under the FRA.  *See supra* pp. 4-5.

Considering all the circumstances, NARA and State's efforts are more than sufficient to satisfy

their duties to recover records, and the Court accordingly lacks authority to order them to request

legal action by the Attorney General.

 As support for its argument that State's actions are insufficient, Judicial Watch relies on

*Judicial Watch, Inc. v. Department of Commerce*, 34 F. Supp. 2d 28, 42 (D.D.C. 1998).  JW

Opp. 12.  In that case, however, the court held that contacting former employees to retrieve

federal records was not enough to remedy Freedom of Information Act ("FOIA") violations

where the court found substantial evidence that the agency destroyed and removed documents

from its control in order to not release them to a FOIA requester.  34 F. Supp. 2d at 42.  There is

no similar evidence here; rather, there is only evidence of State's efforts to recover the former

Secretary's emails.  In addition, *Department of Commerce* was a FOIA case, not an FRA case.

---

  [3]  The December 30, 2012 to February 1, 2013, "gap" referenced by COAI (Opp. 20), as State has made clear, was based on a preliminary review which was later determined to be incorrect.  *See* Exhibit 1 to Def's Motion for Leave to File Surreply (ECF No. 32-1), at 3, *Judicial Watch v. U.S. Dep't of State*, No. 14-cv-1242 (filed Oct. 16, 2015) (reporting that, "during the time period December 30, 2012 through January 31, 2013, there are at least 243 . . . Clinton emails").

Plaintiffs also complain that former Secretary Clinton and/or her representatives sorted federal record emails from personal emails, at a time when Mrs. Clinton was no longer a federal official.  JW Opp. 10-11; COAI Opp. 18.  But nothing in the FRA prohibits an agency from relying on a former employee to identify the federal records to provide in response to an agency request.  In the absence of any evidence to the contrary, the Court should presume that former Secretary Clinton and her representatives were acting in good faith in separating personal from official emails, even though she no longer held her official post.  Not only is there no contrary evidence, the evidence is that Mrs. Clinton and/or her representatives were in some cases over-inclusive in deciding which emails were personal and which were federal records, including 1,246 emails in her production later confirmed by NARA and State to be personal.  Letter from David E. Kendall to Patrick F. Kennedy (Aug. 12, 2015), Exh. E to Def.'s Aug. 12, 2015 Status Report, *Judicial Watch v. Dep't of State*, No. 13-1363 (D.D.C. Aug. 12, 2015) (ECF No. 24-1). Moreover, the fact that a former official utilizes the assistance of personal counsel to identify federal records to provide in response to an agency request has no bearing on the question of whether an agency has fulfilled its FRA obligations.  The FRA provides a cause of action only for the government's *failure* to act to recover records and does not give plaintiffs, or the Court, authority to second-guess either the government's decisions as to the manner in which it will recover records or the procedures employed by the now-private citizen, former Secretary Clinton, to comply with such a request.  Nor does the FRA give authority to the government to recover personal records, as opposed to federal records.  *See* 44 U.S.C. §§ 2905, 3106 (referring to the recovery of "records" unlawfully removed); *id.* § 3301(a)(1)(A) (defining "record").

Plaintiffs also assert that State is required to recover the "native" electronic versions of the approximately 55,000 pages that former Secretary Clinton provided in December 2014, in

order to satisfy its FRA obligations.  COAI Opp. 25-29.  That is incorrect.  State's request, made in its discretion to facilitate its own records management efforts, is sufficient to satisfy its obligations under the FRA to act to recover records.  In any event, NARA's regulations presently provide that emails may be preserved in either paper or electronic form.  *See* 36 C.F.R. § 1236.20 ("Agencies must use electronic or paper recordkeeping systems or a combination of those systems, depending on their business needs, for managing their records."); .22(e), (f).  State is currently transitioning to long-term electronic storage for email but has not fully implemented the directive.  *See* Letter from Paul M. Wester (NARA) to Margaret P. Grafeld (State) (July 2, 2015), Enclosure C to Exhibit 1 to Defs.' Dismiss Mem. (ECF No. 9-2, at pp. 7-8) ("As stated in the OMB/NARA M-12-18 *Managing Government Records Directive*, Federal agencies are required by the end of 2016 to maintain all electronic records, including email, in their native electronic format to facilitate active use and future access.").[4]

## III.   DISCOVERY IS NOT NECESSARY TO RESOLVE THE QUESTIONS OF STANDING AND MOOTNESS

Although defendants will file a separate, more comprehensive opposition to COAI's motion for discovery, now joined by Judicial Watch (due on or before October 26, 2015), it bears noting here that discovery is not necessary to resolve whether plaintiffs have standing and/or whether the case is moot, and hence to resolve the motion to dismiss.  "Jurisdictional discovery . . . is justified only if the plaintiff reasonably 'demonstrates that it can supplement its jurisdictional allegations through discovery.'"  *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 89

---

[4]  Nothing in the FRA mandates that email, or any other electronic records, be managed and preserved in electronic form.  The 2012 OMB Memorandum that requires agencies to "manage both permanent and temporary email records in an accessible electronic format" does not apply until December 31, 2016.  Nonetheless, although State is still transitioning to long-term electronic management for email records, it has voluntarily taken the step of requesting that the former Secretary also provide an electronic copy of her records.

(D.D.C. 2006).  Plaintiff COAI, which has requested discovery here, has not made a sufficient showing that it needs to supplement any factual allegations in its Complaint to respond to defendants' motion to dismiss, and therefore discovery is not warranted.

Defendants have moved to dismiss plaintiffs' claims as a matter of law "on the complaint supplemented by undisputed facts evidenced in the record," *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003), namely, the additional actions taken by State and NARA following filing of these suits.  For purposes of that motion, defendants have accepted plaintiffs' factual allegations as true.  Defs.' Dismiss Mem. 6-7 n.2; *see Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) ("If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true.").  Therefore, there is no dispute of fact before the Court, and no justification for discovery.

COAI asserts that it needs discovery primarily to resolve the "ontologically prior" issue as to whether former Secretary Clinton's email records have been "unlawfully removed" within the meaning of the FRA, thus triggering the duty to request action by the Attorney General. COAI Opp. 1-2; *see also id.* at 5-6, 8.  COAI asserts that defendants have created a dispute of fact as to this issue.  COAI Opp. 1.  But, while quoting defendants' statement in their motion that they "do not concede that the records at issue in this case have been unlawfully removed or destroyed," COAI Opp. 9, COAI omits the rest of that sentence, which states that defendants nonetheless "assume for the purposes of this motion to dismiss that [the FRA's] statutory regime [for destroyed or removed records] applies in these circumstances."  Defs.' Dismiss Mem. 5 n.1. The purpose of this footnote was simply to make clear that defendants are not admitting the records were improperly removed for the purposes of any *future* litigation of this case, not to

11

raise a disputed issue of fact in connection with the present motion.  *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 109, 115 (1979) (as to standing, Court will "'accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party,'" but "[i]t remains open to petitioners, of course, to contest these facts at trial" (citation omitted)).

Thus, defendants ask the Court to assume, for the purposes of the motion to dismiss only, the truth of plaintiffs' allegation that the email records were unlawfully removed.  Discovery as to this issue (which in any event is a mixed question of law and fact) is therefore not necessary or appropriate.  COAI contends that, "without a finding of unlawful removal, any decision by this Court on Defendants' motion to dismiss would amount to an impermissible advisory opinion."  COAI Opp. 8.  But proceeding on this assumption does not render the Court's decision an impermissible advisory opinion.  In fact, the Court *must* resolve the jurisdictional issue of whether plaintiffs meet the redressability prong of the standing inquiry before addressing the issue of whether they have stated a claim under the FRA and the Administrative Procedure Act.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 115 (1998) (holding that the question of the existence of a cause of action is not jurisdictional and that jurisdictional issues such as redressability must be resolved first).

COAI also asserts that discovery is necessary to determine "how extensive and successful" defendants' efforts to recover former Secretary Clinton's federal record emails have been.  Discovery on this issue would also not be of any use to plaintiffs at this stage, however.  Defendants' arguments that their efforts are sufficient are based on the undisputed allegations in the complaints, as well as the additional letters submitted – the existence of which plaintiffs do not dispute.  For the purposes of defendants' motion, defendants ask that the sufficiency of their

12

efforts under the FRA be judged on these allegations and undisputed facts alone.[5]   Accordingly,

discovery on these issues is unnecessary.[6]

---

[5]   For the purposes of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, defendants ask that the motion be judged on  the allegations in the Complaints, without reference to the additional documents submitted for the purposes of the motion to dismiss under Rule 12(b)(1).  *See* Defs.' Dismiss Mem. 20-21 (citing only to the Complaints).  *Cf.* COAI Opp. 34 n.16 (arguing that the Court should not rely on defendants' "exhibits and new factual allegations in its 12(b)(6) analysis").

[6]   Further, much of the extensive discovery COAI purportedly seeks (including a deposition of former Secretary Clinton and up to nine other depositions) has nothing to do with jurisdictional questions raised by defendants' motion or even to issues relating to the ultimate merits of COAI's claims.  Rather than focusing on jurisdictional factual disputes, COAI's motion seeks wide-ranging exploration of all questions connected to former Secretary Clinton's email practices.  *See* Mem. in Support of Cause of Action's Mot. for Jurisdictional Disc. (ECF No. 14-1), at 13-20 (seeking, *inter alia*, to find out "[t]he reason why the State Department asked for the records at the end of 2014," "[t]he reason why the State Department did not insist sooner that Mr. Kendall turn over the thumb drives in his possession," etc.).  Accordingly, discovery should be denied on this basis as well.  *See In re Baan Co. Sec. Litig.*, 81 F. Supp. 2d 75, 82-83 (D.D.C. 2000) (holding that "limited jurisdictional discovery" was permitted but finding the "universe of documents" sought by plaintiff "fatally over broad").

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the Memorandum in Support of

Defendants' Motion to Dismiss, the Court should dismiss both Complaints for lack of subject-

matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) or, in the alternative, for failure to state a claim

upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)).

Dated:  October 21, 2015                           Respectfully submitted,

                                                   BENJAMIN C. MIZER
                                                   Principal Deputy Assistant Attorney General
                                                   Civil Division

                                                   ELIZABETH J. SHAPIRO
                                                   Deputy Director

                                                   MARCIA BERMAN
                                                   Assistant Director

                                                   */s/ Carol Federighi*
                                                   CAROL FEDERIGHI
                                                   Senior Trial Counsel
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   P.O. Box 883
                                                   Washington, DC 20044
                                                   Phone: (202) 514-1903
                                                   Email: carol.federighi@usdoj.gov

                                                   *Counsel for Defendant*