## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUDICIAL WATCH, INC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 15-785 (JEB)** |
| **JOHN F. KERRY, in his official capacity as U.S. Secretary of State,** | |
| **Defendant.** | |
| -------------------------------------------------------- | |
| **CAUSE OF ACTION INSTITUTE,** | |
| **Plaintiff,** | |
| **v.** | |
| | **Civil Action No. 15-1068 (JEB)** |
| **JOHN F. KERRY, in his official capacity as U.S. Secretary of State, and DAVID S. FERRIERO, in his official capacity as U.S. Archivist,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

It would be understatement to note that email communications involving Hillary Clinton as Secretary of State have generated controversy. In fact, dozens of suits have been filed in the federal courthouse here invoking the Freedom of Information Act to compel release of certain emails. The current consolidated cases, however, offer a variation on this theme. Instead of relying on FOIA, these actions by Judicial Watch and Cause of Action Institute invoke the Federal Records Act.

The question here is whether the heads of the State Department and the National Archives and Records Administration – Defendants in these suits – have complied with the FRA in their management of federal records that include the Clinton emails.  While the government's actions and the emails themselves have become a political lightning rod, feeding an insatiable media appetite, the legal issues presented by these cases are relatively straightforward – not least because a plaintiff's right to sue under the FRA is fairly limited.  Given the steps the government has taken to recover the emails, the Court concludes that Plaintiffs' claims are now moot and will be dismissed for lack of subject-matter jurisdiction.

## I.      Background

Judicial Watch, which describes itself as a non-profit "educational organization . . . [that] seeks to promote transparency, accountability, and integrity in government and fidelity to the rule of law," routinely requests records from federal agencies under the Freedom of Information Act.  See JW Compl., ¶ 3.  Following various New York Times articles in early 2015 reporting that former Secretary Clinton had "used at least one non-'state.gov' email account to conduct official government business," and that she had stored those emails "on a server at her home in Chappaqua, New York," Judicial Watch became concerned that federal records had been unlawfully removed from the State Department.  Id., ¶ 5.  It thus filed this suit in May 2015.  The gravamen of its Complaint is that "the State Department's failure to retain, manage, and search these agency records" violates the FRA, which violation cannot be remedied "unless and until [current Secretary of State John] Kerry . . . initiates action through the attorney general to recover the Clinton emails."  Id., ¶¶ 7, 29.  Judicial Watch therefore seeks declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 701, et seq, to require such action.  See id., ¶¶ 20-29.

Jumping on the bandwagon, plaintiff Cause of Action Institute (CAI) brought a similar lawsuit two months later against both Kerry and the Archivist of the United States, David Ferriero, in their official capacities.  See CAI Compl., ¶ 1.  "Concerned that Clinton had violated the Federal Records Act by using a private email account on a private server to conduct government business," CAI and several other government oversight groups wrote to Defendants on March 17, 2015, to convey the view that it was "'of the utmost importance that all of former Secretary Clinton's emails are properly preserved and transferred back to the State Department.'"  Id., ¶ 9 & Exh. 1.  As a result of these allegedly missing emails, CAI's suit maintains that Defendants "should have carried out their non-discretionary statutory duty to initiate legal action to recover all federal records in Clinton [sic] possession and unlawfully removed from the State Department, and to notify Congress that such action is being taken," and that their failure to do so violates the FRA.  Id., ¶¶ 16-17.  In addition to mirroring Judicial Watch's request for injunctive and declaratory relief, CAI also asks the Court to issue a writ of mandamus ordering Defendants to comply with the FRA "by initiating legal action against Clinton through the Attorney General."  Id., ¶ 68.  Both Plaintiffs invoke the APA provision permitting courts to "compel agency action unlawfully withheld or unreasonably delayed" as the basis for the relief they seek.  See 5 U.S.C. § 706(1).

Defendants subsequently moved to consolidate these two actions, since "both cases arise out of former Secretary of State Clinton's use of emails stored on her personal server in the course of her government duties, and both cases seek court orders directing defendants to take action to recover these emails pursuant to the FRA."  Mot. to Consol., ¶ 3.  In light of the propinquity of the two suits, the Court granted the Motion.  See Minute Order of August 4, 2015.  Defendants have now moved to dismiss.

## II.   Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). This standard governs the Court's considerations of Defendants' contentions under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."); Walker v. Jones, 733 F.2d 923, 925–26 (D.C. Cir. 1984) (same). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006).

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3 (2006); Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, unlike with a motion to dismiss

under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction. . . ." Jerome Stevens Pharm., 402 F.3d at 1253.

## III.    Analysis

In moving to dismiss, Defendants rely on both Rule 12(b)(1) and 12(b)(6).  As to the former, they first assert that Plaintiffs lack standing since any injury occasioned by the removal of emails had already been redressed by State's recovery efforts prior to the filing of these suits. See MTD at 13-14.  Defendants alternatively contend that steps recently taken by State fully satisfy its obligations under the FRA, thus rendering the suit moot.  See id. at 17.  Even if jurisdiction exists here, Defendants also argue that the organizations have failed to state a claim for relief under the APA or the mandamus statute.  See id. at 20-21.

Plaintiffs not only oppose Defendants' Motion, but they also move for jurisdictional discovery to aid them in establishing the Court's subject-matter jurisdiction.  See CAI Motion for Jurisdictional Discovery (ECF No. 14); see also JW Motion for Jurisdictional Discovery (ECF No. 15).  They hope to ascertain whether and to what extent federal records were removed by Secretary Clinton, as well as what specific actions were taken by Defendants before and after these lawsuits were filed.  See CAI Disc. Mot. at 13-20.  Unsurprisingly, Defendants believe such discovery is unnecessary.

The Court ultimately concludes that the case is moot.  As a result, it need not address the questions of standing and whether the Complaints sufficiently make out a claim.  Its analysis will begin with a discussion of the FRA, proceed to an examination of mootness, and conclude with a look at jurisdictional discovery.

A.  The Federal Records Act

The FRA is "a collection of statutes governing the creation, management, and disposal of federal records." Public Citizen v. Carlin, 184 F.3d 900, 902 (D.C. Cir. 1999). See also 44 U.S.C. §§ 2101 et seq., 2901 et seq., 3101 et seq., 3301 et seq. Pursuant to the Act, heads of federal agencies are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." Id. § 3101. Each agency head shall also "establish safeguards against the removal or loss of records the head of such agency determines to be necessary and required by regulations of the Archivist[, the head of the National Archives and Records Administration]." Id. § 3105.

A series of provisions within the FRA sets forth a structure whereby the Archivist and agency heads are to work together to ensure that documents are not unlawfully destroyed. Each agency head

> shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.

Id. § 3106. If the agency head does not "initiate action" through the Attorney General, "the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." Id. And if both the agency head and Archivist "fail[] to initiate remedial action in a timely manner, private litigants may sue under the APA to require them to do so." CREW v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (citation and quotation marks omitted).

The core of the parties' dispute here is precisely what enforcement obligations the FRA imposes on Defendants and when private litigants can compel remedial action. Plaintiffs ask the Court to require Defendants to initiate action through the Attorney General to recover Secretary Clinton's emails, which Plaintiffs contend are "federal records" covered by this statutory scheme. See CAI Compl., ¶¶ 35-37. Defendants rejoin that they have already taken sufficient steps to recover these emails and thus need not invoke the aid of the Attorney General.

B. Mootness

In supporting their position, Defendants raise both standing and mootness defenses, which are distinguished by the question of timing. See Garden State Broad. Ltd. Partnership v. FCC, 996 F.2d 386, 394 (D.C. Cir. 1993) ("Mootness and standing are related concepts. The Supreme Court has characterized mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)). In other words, a standing inquiry is concerned with the presence of injury, causation, and redressability at the time a complaint is filed, while a mootness inquiry scrutinizes the presence of these elements after filing – i.e., at the time of a court's decision. See La Botz v. Fed. Election Comm'n, 61 F. Supp. 3d 21, 28 (D.D.C. 2014) ("Whether a plaintiff has standing is determined at the time the suit commences. Thus, standing in the present action is ascertained from the facts as they existed when [Plaintiff] first filed his complaint in this Court.") (citations omitted); see also Advanced Mgmt. Tech., Inc. v. FAA, 211 F.3d 633, 636 (D.C. Cir. 2000) ("The claim may sound like one of mootness – a justiciable controversy existed but no longer remains – but the timing makes [Plaintiff's] problem one of standing. . . . Standing is

assessed at the time the action commences, *i.e.*, in this case, at the time [Plaintiff] sought relief from an Article III court. . . .") (internal quotation marks and citation omitted).

In the present case, relying on mootness is simpler, for it permits the Court to examine factual developments both before and after the filing of the Complaint.  As the record at present clearly demonstrates that Plaintiffs can no longer establish a justiciable case or controversy, the Court need not address the parties' contentions as to standing at the time the suit was filed.

As the Supreme Court has explained time and again, where a plaintiff "c[an] not show any continuing injury, . . . no justiciable controversy remain[s]." Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013).  "To save a case from mootness the ongoing injury must be more than a remote possibility, not conjectural, more than speculative." Liu v. I.N.S., 274 F.3d 533, 535 (D.C. Cir. 2001) (quotation marks and citations omitted).  Importantly, "[p]ast injury from alleged unconstitutional conduct does not in itself show a present case or controversy regarding injunctive relief, if unaccompanied by current adverse effects." A.N.S.W.E.R. Coalition v. Kempthorne, 493 F. Supp. 2d 34, 43 (D.D.C. 2007) (quotation marks and citation omitted). Although Defendants discuss mootness primarily in terms of redressability, the Court believes their arguments are better characterized as addressing the question of whether any injury still exists.

As a threshold matter, because Defendants do not argue to the contrary, the Court assumes without deciding that Plaintiffs fall within the "zone of interests of the records disposal provisions of the FRA," such that they may attempt to allege injury.  See Armstrong v. Bush (Armstrong I), 924 F.2d 282, 288 (D.C. Cir. 1991); see also CREW v. SEC (CREW v. SEC I), 858 F. Supp. 2d 51, 59-60 (D.D.C. 2012) (noting lack of relevant Circuit authority but finding FRA injury where plaintiff alleged impaired access to FOIA documents).

That issue sidestepped, the Court begins its mootness inquiry by examining the nature of injuries cognizable under the FRA.  As a reminder, pursuant to the "mandatory statutory language" in the Act, "the agency head and Archivist are required to take action to prevent the unlawful destruction or removal of records."  Armstrong I, 924 F.2d at 296 n.12.  Where they fail to act, an injury may result, and "the APA permits judicial review of an agency head's enforcement obligations, as they are defined by the FRA."  CREW v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d at 111 (citing Armstrong I, 924 F.2d at 296).

Plaintiffs envision this as such a suit.  They believe that the State Department and the Archivist must initiate legal action through the Attorney General as soon as they receive notice that federal records have been unlawfully removed; as they have not done so in relation to the Clinton emails, Plaintiffs contend that the Court should so compel them.  See JW Opp. at 8. They point to language in Armstrong I – the D.C. Circuit's leading case on FRA enforcement obligations – emphasizing that "[i]n contrast to a statute that merely authorizes an agency to take enforcement action as it deems necessary, the FRA requires the agency head and Archivist to take enforcement action."  Armstrong I, 924 F.2d at 295; see also CAI Opp. at 12-13.

Straightforward as this may appear, the Court does not agree.  While the FRA does require agencies to take some enforcement action, it does not require them immediately to ask the Attorney General to file a lawsuit.  For Armstrong I expressly noted that, notwithstanding the mandatory language in the statute, the court

> d[id] not mean to imply, however, that the Archivist and agency head must initially attempt to prevent the unlawful action by seeking the initiation of legal action.  Instead, the FRA contemplates that the agency head and Archivist may proceed first by . . . taking such intra-agency actions as disciplining staff involved in the unlawful action, increasing oversight by higher agency officials, or threatening legal action.

9

Id. at 296 n.12 (emphasis added).   The Circuit realized that the FRA affords agency heads some discretion in determining how to retain and protect federal records, requiring the initiation of legal action through the Attorney General only if the agency's own attempts to safeguard such records are unsuccessful.   Accord CREW v. SEC I, 858 F. Supp. 2d at 63 ("Armstrong recognized that while the FRA's remedial structure is primarily one of administrative standards and enforcement, a limited private right of action is permitted where the administrative mechanisms are not functioning because of inaction by those who are charged with enforcing the FRA."). A plaintiff's right to compel a referral to the Attorney General, accordingly, is limited to those circumstances in which an agency head and Archivist have taken minimal or no action to remedy the removal or destruction of federal records.   See Armstrong I, 924 F.2d at 296 ("[I]f the agency head or Archivist does nothing while an agency official destroys or removes records in contravention of agency guidelines and directives, private litigants may bring suit to require the agency head and Archivist to fulfill their statutory duty to notify Congress and ask the Attorney General to initiate legal action.") (emphasis added).

The mere fact that federal records were removed from the State Department in contravention of the FRA, therefore, does not automatically entitle a private litigant to a court order requiring the agency to involve the Attorney General in legal action to recover the documents.  Where an agency is engaged in "internal remedial steps . . . in response to a loss of records[,] . . . the Court may not substitute its discretion for that of [the agency]" because "§ 3106 appears to give the agency broad discretion regarding . . . intra-agency corrective actions."  CREW v. SEC (CREW v. SEC II), 916 F. Supp. 2d 141, 148 (D.D.C. 2013) (citation and quotation marks omitted).

Plaintiffs argue alternatively that the FRA permits agencies discretion to take intra-agency action only to <u>prevent</u> the unlawful removal or destruction of federal records, but not to <u>recover</u> those records; in their view, intra-agency action may stave off an FRA suit only before records have been lost.  <u>See</u> JW Opp. at 8.  Yet they offer no authority or argument supporting that proposition and, indeed, appear to acknowledge that it is a distinction without a difference: "[T]he Federal Records Act . . . establish[es] a specific, non-discretionary enforcement mechanism that requires Defendants, once they become aware that federal records have been unlawfully removed <u>and are unable or unwilling to recover such records</u>, to initiate 'action through the Attorney General' for the recovery of those records."  CAI Opp. at 2 (quoting § 3106) (emphasis added).  Even Plaintiffs, it seems, recognize that the FRA does not require the Attorney General's involvement if agencies are willing and able to recover unlawfully removed documents on their own.  The Court, consequently, now considers whether the Secretary of State and the Archivist have been "unable or unwilling" to recover emails that might be federal records, for only then would Plaintiffs be able to allege an ongoing injury under the FRA.

As it happens, the contrary is true: Defendants have taken a number of significant corrective steps to recover Clinton's emails.  First, on November 12, 2014, Patrick F. Kennedy, the Under Secretary of State for Management, sent a letter to Clinton's attorney requesting copies of emails from her personal email account that constituted federal records, if those records were not otherwise preserved in the Department's recordkeeping system.  <u>See</u> CAI Compl., Exh. 4 (Kennedy Letter to Cheryl Mills) at 1-2.  In response, Clinton's representatives provided State with approximately 55,000 pages of responsive documents on December 5, 2014.  <u>See id.</u>, Exh. 4 (Mills Letter to Kennedy); <u>see also</u> JW Compl., ¶ 6.

Three months later, NARA's Chief Records Officer, Paul Wester, Jr., wrote to the State Department requesting that it further explore the matter of Clinton's email records and provide NARA with a report on the issue. See CAI Compl., Exh. 2 (March 3, 2015, Wester Letter to Margaret Grafeld). The Deputy Assistant Secretary for Global Information Services at the Department, Margaret Grafeld, responded by letter, informing NARA that "[i]n December 2014, former Secretary Clinton's representatives provided approximately 55,000 pages of emails that they determined to be potentially responsive to the Department's request." Id., Exh. 4 (April 2, 2015, Grafeld Letter to Wester).

NARA next requested that the State Department endeavor to secure "native electronic versions" of the recovered emails, see MTD, Exh. 1 at 6-7 (July 2, 2015, Wester Letter to Grafeld), which State had in fact already done in a letter to Clinton's attorney, David Kendall. See id. at 2-3 (May 22, 2015, Kennedy Letter to David Kendall). Kendall assured the State Department that Clinton's email servers, as well as drives containing electronic copies of the documents she had provided to the Department, had been turned over to the FBI. See Aug. 12, 2015, Kendall Letter to Kennedy (filed as Exh. E to Aug. 12, 2015, Status Report in Judicial Watch v. Dep't of State, No. 13-1363 (D.D.C. Aug. 12, 2015)). The State Department then wrote to the Director of the FBI, requesting "electronic cop[ies] of the approximately 55,000 pages identified as potential federal records and produced on behalf of former Secretary Clinton . . . in accordance with counsel [the Department] ha[d] received from . . . NARA." MTD, Exh. 1 at 1-2 (Sept. 14, 2015, Kennedy Letter to James Comey). In that same letter, Kennedy requested that the FBI "apprise the Department" of "any potential federal records that may have existed" on Clinton's email server, should the FBI recover any such materials, and that "any recoverable

media and content be preserved by the FBI so that [the Department] can determine how best to proceed." Id.

These are hardly the actions of a recalcitrant agency head or an uncooperative Archivist. Rather, they reflect a sustained effort on the part of State and NARA, after the agencies had learned of the potential removal of federal records from the government's possession, to recover and preserve all of those records. Even if their recovery actions at the time these Complaints were filed were ineffective enough to constitute a "failure to act," thereby providing Plaintiffs with an injury sufficient to support standing – a matter on which the Court offers no opinion – that is surely no longer the case. Taken together, all of the recovery efforts initiated by both agencies up to the present day cannot in any way be described as a dereliction of duty. In light of this, Plaintiffs cannot establish an ongoing injury actionable under the FRA; as such, their cases are moot. See O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects.").

Finally, should Plaintiffs subsequently become aware of other emails beyond those already recovered, they would not be without remedy. They may bring these to the attention of State and the Archivist, and if those entities fail to take recovery action, Plaintiffs may file a new FRA suit. But they cannot sue to force the recovery of records that they hope or imagine might exist. And, to the extent that Plaintiffs have identified emails not currently in State's possession that they believe fit this description, they have not demonstrated that the agency and the Archivist have not taken any steps to recover them.[1]

---

[1] One encouraging point: Recent amendments to the FRA likely make this whole scenario a thing of the past. See Presidential and Federal Records Act Amendments of 2014, Pub. L. 113-187, 128 Stat. 2003 (Nov. 26, 2014), codified at 44 U.S.C. § 2911(a) ("An officer or employee of an executive agency may not create or send a record using a non-official electronic messaging account unless such officer or employee" (1) copies an official account of the officer

C. <u>Jurisdictional Discovery</u>

In addition to opposing Defendants' Motion to Dismiss, CAI has separately moved for jurisdictional discovery, <u>see</u> CAI Disc. Mot. (ECF No. 14), a request that Judicial Watch subsequently joined.  <u>See</u> JW Disc. Mot. (ECF No. 15).  In this circuit, "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."  <u>GTE New Media Servs. Inc. v. BellSouth Corp.</u>, 199 F.3d 1343, 1351 (D.C. Cir. 2000).  At the same time, "[i]t is well established that the district court has broad discretion in its resolution of [jurisdictional] discovery problems."  <u>FC Inv. Grp. LC v. IFX Mkts., Ltd.</u>, 529 F.3d 1087, 1093 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

Courts typically permit jurisdictional discovery where "[t]he record . . . before the court is plainly inadequate" and the party seeking discovery "may be able to present new facts to bolster [its] theory" regarding jurisdiction.  <u>BellSouth Corp.</u>, 199 F.3d at 1352.  "[H]owever, in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court" enjoys jurisdiction over the suit.  <u>Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC</u>, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Furthermore, "a plaintiff must make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce.'"  <u>NBC-USA Housing, Inc., Twenty-Six v. Donovan</u>, 774 F. Supp. 2d 277, 295 (D.D.C. 2011) (quoting <u>Atlantigas Corp. v. Nisource, Inc.</u>, 290 F. Supp. 2d 34, 53 (D.D.C. 2003)).  Importantly, "a request for jurisdictional discovery cannot be

---

when sending the original message or (2) "forwards a complete copy of the record" to an official account within 20 days.).

based on mere conjecture or speculation."  IFX Mkts., Ltd., 529 F.3d at 1094 (citing Bastin v.

Fed. Nat'l Mortgage Ass'n, 104 F.3d 1392, 1396 (D.C. Cir. 1997)).

Plaintiffs believe they are entitled to jurisdictional discovery for three reasons.  They first

argue that discovery "will help establish the factual predicate for Cause of Action's allegation

that former Secretary Clinton unlawfully removed federal records."  CAI Disc. Mot. at 9.  But

Defendants expressly state that, at this stage of the proceedings, they assume without conceding

that Secretary Clinton did unlawfully remove federal records by using her personal email

account to conduct official State Department business.  See ECF No. 17 (Defs. Disc. Opp.) at 3-4

("For purpose of the motion to dismiss[,] . . . defendants have accepted all of plaintiffs' factual

allegations as true, as well as the alleged legal premise that the records were 'unlawfully

removed' and thus fall within the relevant provisions of the FRA.").  So, too, does the Court;

discovery would thus add little to this factual issue.

Plaintiffs next assert that discovery will help them prove their standing at the time the

Complaints were filed.  Because the Court has declined to rule on the parties' standing

arguments, however, there is no need to consider whether discovery would bolster Plaintiffs'

position on the issue.

More to the point is Plaintiffs' final assertion that jurisdictional discovery will aid their

demonstration that this case is not moot.  See CAI Disc. Mot. at 12.  The organizations note that

"Defendants have not sworn a declaration attesting to what actions they have taken or could have

taken since the filing of the complaints," id., an observation that, while true, is unavailing in light

of the undisputed evidence – i.e., copies of relevant correspondence – that Defendants have

submitted.  Plaintiffs, furthermore, struggle to describe with specificity what they expect to

discover about Defendants' activities.  They argue that "questions remain as to why the State

Department went to the trouble of supplying Mr. Kendall with a safe to house the thumb drives

. . . ; whether and to what extent the FBI is recovering Mrs. Clinton's work-related emails from

her server . . .; why the FBI has not delivered copies of any of these records to the State

Department; and whether the State Department is making any efforts to recover emails that may

exist on servers of back-up systems controlled by third-party commercial enterprises." Id. at 12-

13.  Intriguing though they may be, none of these questions provides a basis for jurisdictional

discovery.  Most of them can be answered only by the FBI or "third-party commercial

enterprises" – not the State Department, from whom Plaintiffs seek discovery.   Plaintiffs have

not, moreover, sufficiently explained how any of the answers to these questions, if revealed by

discovery, would undermine the sufficiency of State's recovery actions up to this point and

thereby furnish the Court with jurisdiction.  At best, the Court presumes Plaintiffs mean to argue

that if other emails exist on back-up servers, and if NARA and the State Department are doing

nothing to recover such emails, the Court could compel them to initiate legal action through the

Attorney General under the FRA.  But Plaintiffs offer no good-faith belief that additional emails

do exist on back-up servers, and, if they do, that the State Department knows about them.

　　　Jurisdictional discovery is not a vehicle Plaintiffs may use to hunt for any kernel of fact

marginally relevant to the court's subject-matter jurisdiction, nor is it "a talisman whose mere

utterance can ward off an impending motion to dismiss."  NBC-USA Housing, 774 F. Supp. 2d

at 295; see also Bastin, 104 F.3d at 1396 (district court properly denied request for jurisdictional

discovery that "would amount to nothing more than a fishing expedition").  Instead, Plaintiffs

must persuade the Court that they have "a good faith basis" to believe facts supporting

jurisdiction exist and are likely to be found with targeted discovery.  See NBC-USA Housing,

774 F. Supp. 2d at 295.  As CAI and Judicial Watch have fallen short of doing so here, the Court will deny their Motions.

**IV.     Conclusion**

        For the foregoing reasons, the Court will deny Plaintiffs' Motions for Jurisdictional Discovery and grant Defendants' Motion to Dismiss.  A contemporaneous Order to that effect will issue this day.

                                            /s/ *James E. Boasberg*
                                            JAMES E. BOASBERG
                                            United States District Judge

Date: January 11, 2016