UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> REX W. TIILLERSON, in his official capacity as U.S. Secretary of State, <br><br> Defendant. <br> ------------------------------------------------------- <br> CAUSE OF ACTION INSTITUTE, <br><br> Plaintiff, <br><br> v. <br><br> REX W. TILLERSON, in his official capacity as U.S. Secretary of State, and <br> DAVID S. FERRIERO, in his official capacity as U.S. Archivist, <br><br> Defendants. | Civil Action No. 15-785 (JEB) <br><br><br><br><br><br><br><br><br><br> Civil Action No. 15-1068 (JEB) |

## MEMORANDUM OPINION

The 2016 presidential election may have come and gone, but Plaintiffs Judicial Watch and Cause of Action Institute's quest for Hillary Clinton's emails lives on. As most readers will remember, Clinton used private email accounts during her tenure as Secretary of State, embroiling the government in myriad Freedom of Information Act suits. In this case, however, Plaintiffs have taken a different tack, alleging a violation of the Federal Records Act. That is, they claim Defendants State Department and the National Archives and Records Administration failed to maintain records of Clinton's emails and must now seek the Department of Justice's

1

assistance in their recovery. Most broadly characterized, Plaintiffs' suit pertains to tens of thousands of communications. At this stage, however, the parties have largely zeroed in on a sliver of that trove — to wit, emails sent by Clinton on two Blackberry accounts during her first weeks in office.

The present controversy is narrower still. To establish its good-faith recovery efforts, the Government has submitted a declaration describing grand-jury subpoenas issued to Clinton's service providers. The catch? It offers the full version for *in camera* and *ex parte* review only. Plaintiffs have responded with a Motion to Produce, arguing that to the extent this Court might rely on the declaration, they must have unfiltered access. After reviewing the document *in camera*, the Court concludes that it largely rehashes information already made public, thus obviating any need for secrecy. The Court will therefore grant Plaintiffs' Motion in large part and, subject to a very limited exception, order that Defendants resubmit an unredacted version of the declaration.

**I.     Background**

Plaintiffs are two non-profit organizations, which describe themselves as dedicated to promoting "transparency, accountability, and integrity in government." JW Compl., ¶ 3; COA Compl., ¶ 21. In the wake of reporting that former Secretary Clinton had used a personal email account and server to "conduct official government business," both organizations became concerned that federal records had been unlawfully removed from the State Department. See JW Compl., ¶ 5. Judicial Watch therefore filed suit on May 2015, and Cause of Action joined the mix two months later. Both alleged violations of the Federal Records Act, 44 U.S.C. §§ 2101 *et seq.*, 2901 *et seq.*, 3101 *et seq.*, 3301 *et seq.*, "a collection of statutes governing the creation, management, and disposal of records by federal agencies." Public Citizen v. Carlin, 184 F.3d

900, 902 (D.C. Cir. 1999). Plaintiffs claimed principally that the State Department had failed to retain and search agency records, such that the current Secretary of State must "initiate[] action through the attorney general to recover the Clinton emails." JW Compl., ¶¶ 7, 29; COA Compl., ¶¶ 16-17, 68.

This Court dismissed the suit as moot. See Judicial Watch, Inc. v. Kerry, 156 F. Supp. 3d 69, 73 (D.D.C. 2016). To proceed, it reasoned, Plaintiffs must allege an ongoing injury under the FRA, but both NARA and State had already taken substantial steps to recover more than 55,000 pages of Clinton's emails. Id. 76-78. The Court of Appeals reversed. See Judicial Watch, Inc. v. Kerry, 844 F.3d 952, 953 (D.C. Cir. 2016). It allowed that "actions taken by the Department and the FBI might have mooted appellants' claims by securing custody of all emails that the Attorney General could have recovered in an enforcement action." Id. at 955 (emphasis added). But although the tag-team efforts "bore some fruit," the Court of Appeals believed that "shaking the tree harder . . . might [] bear more still." Id. Specifically, it highlighted that Clinton had used a Blackberry account during her first weeks in office — from January 21, 2009, to March 18, 2009 — and the record showed no effort by State or the FBI to recover those emails. Id. at 955-56. The Court of Appeals then held that the case was not moot "[a]bsent a showing that the requested enforcement action could not shake loose a few more emails." Id. at 955. It noted, however, that Defendants might once again raise mootness on remand. Id. at 956-57.

Now back for round two, Defendants have accepted the invitation and renew their Motion to Dismiss on mootness grounds. See ECF No. 33. To that end, they have explained their efforts to track down the remaining Clinton emails, including those recovered by the FBI during its investigations. See, e.g., id., Exhs. 1-4. Before the parties finish briefing, however, the Court

must pause to resolve a narrower controversy: whether Defendants can submit one document — the Second Declaration of FBI Special Agent E.W. Priestap — *in camera* and *ex parte* in support of their Motion. Priestap previously submitted an unredacted declaration (his "First Declaration") and there tipped off Plaintiffs that the FBI had issued grand-jury subpoenas to third-party providers. See Def. MTD, Exh. 1 (Declaration of E.W. Priestap), ¶ 4. Defendants then followed up with Preiestap's Second Declaration, but this time redacted large portions of the public version. See Def. Opp. to Mot. to Produce at 4 n.1; see also ECF 43-3, Exh. 3. The Court discusses the disputed Second Declaration in more detail below, but for now, suffice it to say that it offers (a few) more specifics about the grand-jury subpoenas.

## II. Legal Standard

Federal Rule of Criminal Procedure 6(e) bars the disclosure of matters occurring before a grand jury. See Fed. R. Crim. P. 6(e)(2)(B). This is not to say, however, that Rule 6(e) draws "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury." SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980) (*en banc*). On the contrary, "[t]here is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." Senate of Puerto Rico v. DOJ, 823 F.2d 574, 582 (D.C. Cir. 1987). Indeed, Rule 6(e) includes a carve-out, which allows a court to authorize disclosure of "a grand jury matter . . . in connection with a judicial proceeding" "at a time, in a manner, and subject to any conditions that it directs." Fed. R. Crim. P. 6(e)(3)(E)(i).

To trigger that provision, a party must show that the sought-after information "[1] is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that their request is structured to cover only material so needed." Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 222

4

(1979).  This standard is "a highly flexible one . . . and sensitive to the fact that the requirements of secrecy are greater in some situations than in others."  United States v. Sells Eng'g, 463 U.S. 418, 445 (1983).  Although the party seeking disclosure must show "with particularity" why it needs the information, see United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958), it will face a "lesser burden" as "the considerations justifying secrecy become less relevant."  Douglas Oil, 441 U.S. at 223.

**III.   Analysis**

This case largely comes down to a simple balancing act between "the need for disclosure" and "the need for continued secrecy."  Douglas Oil, 441 U.S. at 222.  On the one hand, Plaintiffs argue that disclosure is crucial, as they must access any facts that Defendants use to support their Motion to Dismiss.  See Mot. to Produce at 7.  To refresh, that Motion turns on whether Defendants have already exhausted all avenues for email recovery, such that any action under the FRA would be — to adopt the D.C. Circuit's metaphor — fruitless.  As a result, they submitted the Second Declaration, averring that the FBI "undertook all reasonable and comprehensive efforts" to recover relevant emails and providing supporting evidence.  See Second Decl., ¶ 11.  Not surprisingly, Plaintiffs are loath to take the Government's word for it.  Ordinarily, they argue, *in camera* and *ex parte* review is appropriate only "when a party seeks to prevent use of the materials in the litigation," such as by asserting an evidentiary privilege.  Abourezk v. Reagan, 785 F.2d 1043, 1061 (D.C. Cir. 1986).  In that instance, a court may properly inspect the evidence "alone for the limited purpose of determining whether the asserted privilege is genuinely applicable."  Id.  This case assumes a different posture: The Government hopes it can rely on its grand-jury subpoenas while still shielding their contents from Plaintiffs

and the public. "Only in the most extraordinary circumstances," however, "does [] precedent countenance court reliance upon *ex parte* evidence to decide the merits of a dispute." Id.

On the other hand, the Government seeks to preserve the secrecy of grand-jury proceedings, an interest that would typically weigh heavily in its favor. As an initial matter, though, the Second Declaration largely steers clear of Rule 6(e)'s bread and butter: "the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." In re Motions of Dow Jones & Co., Inc., 142 F.3d 496, 500 (D.C. Cir. 1998) (internal quotation marks omitted). Rather, it recounts one agent's description of grand-jury subpoenas. The D.C. Circuit "has recognized that the term 'grand jury subpoena' is in some respects a misnomer, because the grand jury itself does not decide whether to issue the subpoena; the prosecuting attorney does." Lopez v. DOJ, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting Doe v. DiGenova, 779 F.2d 74, 80 & n.11 (D.C. Cir. 1985)). Although such a subpoena likely falls under Rule 6(e)'s purview — for instance, when it betrays "the direction of the relevant investigation," id. at 1350 — the Government's broad summary of its generic subpoenas starts with a somewhat more tenuous claim to secrecy.

More importantly, the D.C. Circuit's case law "reflects the common-sense proposition that secrecy is no longer 'necessary' when the contents of grand jury matters have become public." In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1138, 1140 (D.C. Cir. 2006). In this case, the Government has already revealed that it issued grand-jury subpoenas to Clinton's service providers. See First Decl., ¶ 4. That information, then, "is sufficiently widely known [such] that it has lost its character as Rule 6(e) material." In re North, 16 F.3d 1234, 1245 (D.C.

6

Cir. 1994). After reviewing the Second Declaration *in camera*, the Court confirms that disclosure thereof would imperil little other secret information.

The Second Declaration consists of 12 paragraphs, six of which are redacted. See Second Decl., ¶¶ 1-11. The first three redacted paragraphs (mistakenly labeled Paragraphs 5, 5, and 6) largely confirm what the Government had "discussed in [the] first declaration" — namely, that Clinton used two Blackberry email accounts between January 21, 2009, and March 18, 2009. Cf. First Decl., ¶ 4 (describing her use of hr15@mycingular.blackberry.net and hr15@att.blackberry.net during that time period). It then overviews, as the First Declaration did, the agency's efforts to recover those emails, including by grand-jury subpoenas. Cf. id., ¶¶ 4, 10.

Paragraph 7 lists the identities of subpoena recipients. Here, Defendants make their first (and only) case for confidentiality: they ask the Court to shield those identities, as "secrecy is critical to maintaining positive working relationships with [the providers] and other similarly situated companies." Def. Opp. at 5. This argument might have more force had Defendants not already made public that 1) the FBI issued grand-jury subpoenas to "providers," and 2) Clinton used a "BlackBerry device with service initially from Cingular Wireless and later AT&T wireless." First Decl., ¶ 4. It's not hard to connect the dots. See Josh Gerstein, FBI Confirms Grand Jury Subpoenas Used in Clinton Email Probe, Politco (Apr. 27, 2017), http://www.politico.com/blogs/under-the-radar/2017/04/27/hillary-clinton-emails-subpoenas-fbi-237712 ("Priestap did not provide details about the subpoenas, although he suggested they were served on AT&T Wireless and a firm it acquired, Cingular."). There is thus little value in redacting those identities, with one exception: the Second Declaration states that the FBI also subpoenaed Clinton's e-mail service provider. The agency has never previously disclosed the identity of that company and thus maintains an interest in its secrecy. For Plaintiffs, it should

7

suffice to know that the FBI subpoenaed a third party (and not, as they suggest, "Clinton's staff or attorneys"). See Reply at 4. Defendants may therefore continue to redact the email provider's name.

Moving to Paragraphs 8 and 9, the Declaration states that no service providers retained any data from Clinton's accounts, and thus none could recover any relevant emails. The First Declaration already said as much. Cf. First Decl., ¶ 4. Those paragraphs then add a few more particulars, such as that the FBI complied with its statutory obligations by requesting only "transaction information," like subject lines and e-mail addresses, from the service providers. Any observer could likely so surmise based on 18 U.S.C. § 2703, which limits the scope of electronically stored information available with a grand-jury subpoena. The declaration also reveals that the FBI reissued subpoenas to providers to double check that no data would be available. Again, the bottom line is the same as the FBI's public disclosures: its subpoenas "produced no responsive materials, as the requested data was outside the retention time utilized by those providers." First Decl., ¶ 4. The Government asserts no interest in keeping those details secret, and the Court detects no overriding reason to do so.

That leaves Paragraph 10. This Paragraph, at least ostensibly, adds new information about the scope of subpoenas: when the FBI discovered that Clinton had potentially transmitted classified information to private third-party e-mail accounts, it sought "additional legal process." The paragraph might be read to suggest that the Bureau subpoenaed the provider information of third parties, such as Clinton's staff. But it provides no information on 1) which third parties had classified information, 2) which providers, if any, were subpoenaed, and 3) the returns on any subpoenas. And it is hardly news that the FBI used "legal process" to recover classified information relayed to Clinton's staffers. Most infamously, many a news outlet reported that the

FBI obtained a search warrant for Clinton aide Huma Abedin's emails. See, e.g., Matt Apuzzo *et al.*, Justice Department Obtains Warrant to Review Clinton Aide's Emails, N.Y. Times (Oct. 30, 2016). The First Declaration alludes to the same incident. See First Decl., ¶ 14. Paragraph 10 — like the much of what came before it — thus reveals little to no secret information. The scale therefore tips once again towards Plaintiffs' need for disclosure.

Finally, Defendants note that even if "this Court does grant [Plaintiffs'] motion . . . , [they] must then proceed to the court which empaneled the grand jury at issue," to allow that court to make a final determination about disclosure. See Def. Opp. at 6. Not so. It is true, as Defendants say, that when the court that empaneled the grand jury differs from the court considering a Rule 6(e) request, the two courts may cooperate. The latter, for instance, might certify the question of disclosure to the grand-jury court. See, e.g., United States v. Alston, 491 F. Supp. 215, 216-217 (D.D.C. 1980). But as the Supreme Court has made clear, "[T]here will be cases in which the court to whom the Rule 6(e) request is directed will be able intelligently . . . to decide that disclosure plainly is inappropriate or that justice requires immediate disclosure to the requesting party, without reference of the matter to any other court." Douglas Oil, 441 U.S. at 231. This is such a case. While the grand-jury court may typically be better positioned to evaluate the need for secrecy, the Defendants here have already let the grand-jury cat out of the bag. For the reasons discussed above, there is little remaining information to keep secret, and this Court can therefore appropriately order disclosure.

## IV. Conclusion

For the foregoing reasons, the Court will substantially grant Plaintiffs' Motion to Produce and order that if the Government intends to rely on the Second Priestap Declaration, it must

resubmit an unredacted version (except as to the identity of Clinton's email provider). A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 31, 2017